NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE ESTATE OF THERESA TORSIELLO by VINCENT TORSIELLO EXECUTOR, on behalf of itself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MCGOVERN LEGAL SERVICES, LLC,<br><br>Defendant. | Civ. No. 14-3814<br><br>**OPINION** |

THOMPSON, U.S.D.J.

    This matter comes before the Court upon the Motion of Defendant McGovern Legal Services, LLC ("Defendant") to Dismiss the Complaint of Plaintiff Estate of Theresa Torsiello by Vincent Torsiello, Executor, on behalf of itself and others similarly situated ("Plaintiff"). (Doc. No. 8). Plaintiff opposes this motion. (Doc. No. 10). The Court has issued the Opinion below based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's motion will be denied.

BACKGROUND

    This action alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C.A § 1692 et seq. ("FDCPA").

    Plaintiff Theresa Torsiello owned a unit within Greenbriar Association, Inc. ("Greenbriar") and was obligated to pay a pro rata share of the expenses and administrative costs of operating the association. (Compl., Ex. D at ¶¶ 3-4). Ms. Torsiello defaulted on these

1

payments, *id*. at ¶ 9, and subsequently died in March of 2013, leaving a will that appointed her son Vincent Torsiello executor of her estate.  (Compl. at 1).

Greenbriar, who is not a named party in this action, retained Defendant to collect Plaintiff's unpaid debt.  (*Id*. at 2).  On October 10, 2013, Defendant sent Plaintiff a letter stating: (1) Plaintiff owed Greenbriar $1,291.11, including $76.11 in attorneys' fees, and (2) after thirty days, Greenbriar may assert a lien against Plaintiff's home, which would result in additional attorneys' fees and costs in excess of $450.  (Compl., Ex. A).  On October 18, 2013, Plaintiff sent Defendant a letter disputing the validity of the debt.  (Compl. at 3).  In response, on October 23, 2013, Defendant sent Plaintiff a statement containing an itemized list of outstanding fees. (Compl. Ex., B).  On December 9, 2013, Defendant sent another letter to Plaintiff, stating that a lien and lien discharge with respect to the property had been prepared and that the associated fees and legal costs amounted to $400.  (Compl., Ex. C).  The letter also asserted an additional $339 charge for legal fees since Defendant had been instructed to initiate court proceedings to obtain a judgment against Plaintiff.  (*Id*.)

On December 11, 2013, Greenbriar commenced a lawsuit in the Superior Court of New Jersey, alleging that Plaintiff was indebted to Greenbriar in the amount of $2,190.11 as of December 2013.  (Compl., Ex. D).  Defendant served as Greenbriar's legal counsel in this suit but was not a named party in the action. (Sayles Decl., Ex. B).  On January 14, 2014, Defendant sent Plaintiff's counsel a letter stating that Plaintiff's payoff amount was $2,693.11, with an itemized statement of charges.  (Compl., Ex. E).  On January 30, 2014, a Stipulation of Settlement between Plaintiff and Greenbriar was filed with the Court.  (Sayles Decl., Ex. D). The settlement agreement contained a release provision stating the following:

> Vincent Torsiello, as Executor of the Estate of Theresa Torsiello, hereby consents to this Stipulation without defenses, set-offs, claims or

2

>     counterclaims of any kind. To the extent that any defenses, set-offs, claims
>     or counterclaims may exist, whether known or unknown, the defendant
>     waives and releases them.

(*Id.* at ¶ 3). In addition, the settlement stipulated that Plaintiff "acknowledges and agrees that the Estate is obligated to Greenbriar Association, Inc. . . . in the amount of $2,843.11 through January 31, 2014 . . . which includes all maintenance fees, other charges and attorney fees. . . ." (*Id.*). Plaintiff does not dispute the validity of the January 31, 2014 settlement.

On May 7, 2014, Plaintiff filed the present action against Defendant in the Superior Court of New Jersey. (Compl. at 1). The case was subsequently removed to federal court on June 13, 2014. (Doc. No. 1). Plaintiff claims that Defendant violated the FDCPA by falsely representing the nature and amount of legal and other fees Plaintiff owed to Greenbriar in the series of letters Defendant sent to Plaintiff prior to the settlement. (Compl. at 3-6). Based on the final itemized statement Defendant sent to Plaintiff on January 14, 2014 in combination with the $2,190.11 amount asserted by Greenbriar in the December 11, 2013 state action, Plaintiff inferred that the actual costs of attorneys' and other related fees incurred by Defendant in relation to the lien amounted to approximately $589. (*Id.* at 5-6). Because this amount is inconsistent with the $450 amount listed in the October 10 letter and the $400 plus $339 amounts listed in the December 9 letter, Plaintiff claims that Defendant was demanding fees in its collection letters it had not yet incurred. (*Id.* at 10). Plaintiff alleges that these representations constituted false statements and overshadowed the rights of Plaintiff in the collection of a debt in violation of FDCPA provisions 15 U.S.C.A §§ 1692(e), (f), (g). (*Id.* at 10-11).

On July 21, 2014, Defendant moved to dismiss this suit, asserting that Plaintiff's action is barred due to the following: (1) the prior settlement entered into by Plaintiff regarding the debt

owed to Greenbriar; (2) New Jersey's Entire Controversy Doctrine; (3) Judicial Estoppel; and (4) Equitable Estoppel. (Doc. No. 8).

## DISCUSSION

a. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. 678–79).

b. Analysis

1. Elements of an FDCPA claim

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors," 15 U.S.C.A. § 1692(e). The statute defines "debt" to cover only those monetary

obligations incurred "primarily for personal, family, or household purposes."  15 U.S.C.A. § 1692(a)(5).  In addition, the Supreme Court has unanimously held that "debt collector," as referred to in the FDCPA, includes attorneys regularly engaged in debt collection.  *See Heintz v. Jenkins,* 514 *U.S.* 291, 292 (1995); *see also Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 232 (3d Cir. 2005) (holding that attorneys who pursued debt collection litigation were "debt collectors" subject to the FDCPA).

Here, Plaintiff sues under 15 U.S.C.A. § 1692(e), (f), and (g).  Subsection (e) prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and contains an illustrative but non-exhaustive list of examples of violations.  Subsection (f) bars debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt" and also contains an illustrative but non-exhaustive list of examples of violations.  Subsection (g) covers the validation of debts, requires debt collectors to provide notice to debtors of specific information regarding their debt, and bars debt collectors from contradicting or overshadowing such notices of debtors' rights.

"A communication is deceptive for purposes of the [FDCPA] if it can be reasonably read to have two or more different meanings, one of which is inaccurate."  *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298–99 (3d Cir. 2008) (internal citations and quotation marks omitted).  When determining whether a communication is deceptive for FDCPA purposes, courts apply an unsophisticated debtor standard.  *See id.*, ("In order to give effect to the Act's intent to protect the gullible as well as the shrewd, courts have analyzed the statutory requirements from the perspective of the least sophisticated debtor.") (internal citations and quotations removed); *Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir. 2003) (The standard "assumes that the debtor is uninformed, naïve, or trusting, and that statements are not confusing

5

or misleading unless a significant fraction of the population would be similarly misled") (internal citations and quotations removed).  The issue of whether a letter violates the FDCPA is a question of fact.  *See e.g.*, *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 501 (7th Cir. 1999); *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1059–60 (7th Cir. 1999).

Here, Plaintiff's debt was incurred in relation to her housing.  Defendant is a legal services firm engaged in debt collection.  Thus, the threshold "debt" and "debt collector" elements of the FDCPA appear to be met.  In addition, Plaintiff's Complaint has highlighted inconsistencies among Defendant's October 10, 2013, December 9, 2013, and January 14, 2014 collection letters, asserting that Defendants' letters requested legal fees that were $150 in excess of what was actually incurred.  This disputed amount is small, but a reasonable juror, construing all allegations in the light most favorable to Plaintiff, could find Defendants' letters to be deceptive, unconscionable, and in violation of the FDCPA.

Defendant has not disputed Plaintiff's satisfaction of these elements in its Motion to Dismiss.  Instead, Defendant has asserted several reasons why Plaintiff's claim, regardless of whether it has merit, is nevertheless barred.

2. Defendant's alleged grounds for dismissal

   i. Settlement

Defendant asserts that Plaintiff's present action is barred because Plaintiff waived this claim through the release provision of the January 30, 2014 settlement between Greenbriar and Plaintiff.  "A release is merely a form of contract and the general rules that apply to contract interpretation apply to releases.  When reading a contract, our goal is to discover the intention of the parties.  We consider the contractual terms, the surrounding circumstances, and the purpose of the contract.  Generally the terms of an agreement are to be given their plain and ordinary

meaning." *Estate of Picon v. FBR Grp.*, 2013 WL 5610862, at *3 (N.J. Super. Ct. App. Div. Oct. 15, 2013) (internal citations and quotations omitted). Moreover, "the secret, unexpressed intent of a party cannot be used to vary the terms of an agreement." *Domanske v. Rapid-Am. Corp.*, 330 N.J. Super. 241, 246 (App. Div. 2000). Contract interpretation is a legal question for the court unless there is ambiguity such that "the meaning is both unclear and dependent on conflicting testimony." *Celanese Ltd. v. Essex Cnty. Improvement Auth.*, 404 N.J. Super. 514, 528 (App. Div. 2009).

Here, the settlement that Plaintiff agreed to explicitly states that Plaintiff consents to the stipulation "without defenses, set-offs, claims or counterclaims of any kind. To the extent that any defenses, set-offs, claims or counterclaims may exist, whether known or unknown, [Plaintiff] waives and releases them." (Sayles Decl., Ex. D at ¶ 3). Notably, the provision does not specify against whom the claims are released. As a result, the parties have asserted conflicting accounts of the scope of the release provision.

Defendant argues that the broad language of the provision reveals that the parties intended for the release to cover all potential claims related to the transaction that is the subject of the settlement, i.e., claims arising out of Plaintiff's debt to Greenbriar. Under this interpretation, Defendant asserts that Plaintiff's FDCPA claim, because it relates to Plaintiff's debt owed to Greenbriar, is barred by the settlement. In opposition, Plaintiff asserts that use of the terms "defenses, set-offs, claims and counterclaims" indicates that the release is limited to actions against Greenbriar only, since a claim against the Defendant, who was not a party to the settlement, would not have been a "defense, set-off, claim or counterclaim."

The notably broad language of the release provision does seem to suggest that the waiver was intended to encompass all possible claims arising out of Plaintiff's debt to Greenbriar. Thus,

7

allowing Plaintiff's claim to proceed would seem to contradict the spirit of the release provision. Nevertheless, since Defendant was not a party to the state court suit and settlement, did not sign the settlement agreement as a party, and appears to be a completely separate entity from Greenbriar, there appears to be ambiguity regarding the scope and operation of the settlement release with respect to Defendant.  In addition, Defendant has not established any privity between itself and Greenbriar that would allow Defendant to claim protection under the settlement at this Motion to Dismiss stage.[1]  Therefore, Defendant has not shown that Plaintiff's action is barred by the settlement.

      ii.      New Jersey's Entire Controversy Doctrine

Defendant also asserts that Plaintiff's action is precluded under New Jersey's Entire Controversy Doctrine, New Jersey Court Rule 4:30A.  This doctrine "requires joinder in one action of all legal and equitable claims related to a single underlying transaction." *Manhattan Woods Golf Club, Inc. v. Arai*, 312 N.J. Super. 573, 577 (App. Div. 1998).  Failure to join related claims results in preclusion.  N.J. Ct. R. 4:30A.  Notably, "[i]t is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties that trigger

---

[1] In Defendant's briefs, the issue of privity is discussed in only one sentence.  Moreover, there is some indication that privity would not exist between Greenbriar and Defendant because debt collectors who are lawyers are held to a higher standard under the FDCPA than non-lawyers. *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 301 (3d Cir. 2008) ("Under the Act, attorney debt collectors warrant closer scrutiny because their abusive collection practices are more egregious than those of lay collectors.").  Greenbriar is not a legal firm and thus had it collected Plaintiff's debt without enlisting the services of Defendant, which does provide legal services, it would have been subject to a different standard under the FDCPA.  In addition, several courts have found no privity to exist between a creditor and the creditor's lawyers in the context of the FDCPA.  *See e.g., Balk v. Ferestein & Smith, LLP*, 2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011); *Reyes v. Kenosian & Miele*, LLP, 619 F.Supp.2d 796 (N.D.Cal. 2008); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783 (S.D. Ohio 2006); *Kolker v. Sanchez*, 1991 WL 11691589 (D.N.M. 1991).  Finally, the underlying claim in state court dealt with the amount Plaintiff owed to a property association, while Plaintiff's claim here relates to an alleged violation of a federal debt collection statute by a debt collector.

the requirement of joinder." *Jackson v. Midland Funding LLC*, 468 Fed. Appx. 123, 125 (3d Cir. 2012). The purpose of the doctrine is to "ensure fairness to parties and achiev[e] economy of judicial resources." *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428, 443 (2011).

Here, Defendant asserts that Plaintiff's FDCPA action arises from the same transaction underlying Greenbriar's state court suit and that by failing to join a third party claim against Defendant in that suit, Plaintiff's FDCPA claim is precluded under New Jersey's Entire Controversy Doctrine. In response, Plaintiff argues that the state court action and the FDCPA claim, although related, are ultimately based on different facts and involve different parties. Whereas the state collection claim "would have explored whether [plaintiff] had incurred that debt, whether she had defaulted on it, and what remedy would have been appropriate," Plaintiff's FDCPA claim focuses on the conduct of the collection agency in collecting the debt. *Jackson*, 468 Fed. Appx. at 125–26 (holding that plaintiff's FDCPA claim was not barred under New Jersey's Entire Controversy Doctrine even though plaintiff had not asserted the claim in the prior state court collection suit); *see also Ekinici v. GNOC Corp.*, 2002 WL 31956011 (E.D.N.Y. Dec. 31, 2002) (holding that plaintiff's FDCPA claim was not precluded under New Jersey's Entire Controversy Doctrine even though plaintiff failed to raise this claim in a prior state court collection suit).

Moreover, courts have stated that "The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 2002); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he plaintiff who admittedly owes a legitimate debt has standing to sue if the [FDCPA] is violated by an unprincipled debt collector."); *McCartney v.*

*First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ("The Act makes debt collectors liable for various abusive, deceptive, and unfair debt collection practices regardless of whether the debt is valid.").

Plaintiff's allegations here, essentially asserting a $150 discrepancy in Defendants' stated legal fees, are not as egregious as those in previous cases where courts have found FDCPA claims not precluded by the Entire Controversy Doctrine.  *See*, *e.g.*, *Jackson v. Midland Funding LLC*, 468 Fed. Appx. 123 (3d Cir. 2012) (debt collector filed suit against the debtor after the statute of limitations expired); *Ekinici v. GNOC Corp.*, 2002 WL 31956011 (E.D.N.Y. Dec. 31, 2002) (creditor misrepresented itself as a third party debt collector in its collection letters). However, in light of the FDCPA's purposes and the fact that the inquiry in Plaintiff's present FDCPA action centers on the nature of Defendant's collection letters to Plaintiff as distinguished from the validity of Plaintiff's underlying debt, Defendant has not shown that Plaintiff's FDCPA claim is barred under New Jersey's Entire Controversy Doctrine.

      iii.      Judicial Estoppel

"Judicial estoppel . . . is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). Judicial estoppel applies only when "a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding." *Kimball Intern., Inc. v. Northfield Metal Prods.*, 334 N.J. Super. 596, 606 (App. Div. 2000).  However, judicial estoppel does not "bar every conceivable inconsistency" between a party's past and present assertions. *Cummings v. Bahr*, 295 N.J. Super. 274, 387 (App. Div. 1996).

Defendant asserts that Plaintiff should be estopped from asserting its FDCPA claim because it would contradict prior settlement terms.  Specifically, Defendant argues that in the prior settlement, Plaintiff acknowledged the total amount of debt it owed to Greenbriar, including legal fees, and that Plaintiff agreed to waive all claims in the release provision. Because the settlement occurred after all allegedly deceptive collection letters had been received by Plaintiff, Defendant asserts that permitting Plaintiff to now assert an FDCPA claim contradicts Plaintiff's prior acceptance of the letters, debt, and release during settlement.

As stated above in the previous section, the issue of how much Plaintiff legitimately owes Greenbriar is distinct from the issue of whether Defendant, in its collection letters, unlawfully demanded amounts higher than what it actually incurred at the time it sent the letters.  Thus, Plaintiff's prior acknowledgement of the debt owed does not necessarily contradict any position Plaintiff is now asserting.  Although Plaintiff's suit seems to be in tension with the spirit of the broadly phrased release provision, given the ambiguities discussed above regarding the scope of that provision, it is not clear that Plaintiff's present suit contradicts the terms of the settlement release clause.  Thus, Defendant has not shown that Plaintiff's suit is barred by judicial estoppel.

    iv.    Equitable Estoppel

"Equitable estoppel is an equitable doctrine and is subject to the discretion of the trial court."  *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 242 (3d Cir. 1994).  "The doctrine of equitable estoppel is applied only in very compelling circumstances."  *Davin, LLC. v. Daham*, 329 N.J. Super. 54, 67 (App. Div. 2000).  The party asserting estoppel has the burden of proof and must show: (1) a misrepresentation by another party, (2) which was reasonably relied upon, and (3) caused detriment.  *U.S. v. Asmar*, 826 F.2d 907, 912 (3d Cir. 1987).

Defendant asserts that Plaintiff's suit should be barred because it and Greenbriar relied on Plaintiff's voluntary settlement of Plaintiff's debt.  Specifically, Defendant argues that permitting Plaintiff to now disregard its prior representations releasing all claims would effectively deprive Defendant of the benefits it negotiated, while leaving Plaintiff's negotiated benefits—dismissal of the state collection action and clearing title defects to Plaintiff's condominium—intact.

As stated above, while Plaintiff's present action does seem in tension with the spirit of the settlement agreement, given that (1) Defendant was not a party in the state court collection action and subsequent settlement and (2) Defendant has not adequately established any privity between itself and Greenbriar, Defendant has not shown reasonable reliance and detriment required to establish equitable estoppel.

Defendant has not shown that Plaintiff's claim is barred by a previous settlement, New Jersey's Entire Controversy Doctrine, judicial estoppel, or equitable estoppel.  Therefore, it has not satisfied its burden to show that Plaintiff has failed to present a plausible claim for relief.

CONCLUSION

For the reasons above, Defendant's Motion to Dismiss will be denied.


/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.